## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THEODORE COREY MITCHELL** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-1882** |
| | * | |
| **TEAM LABOR FORCE, LLC, ET AL.** | * | **SECTION "L"(2)** |

### ORDER & REASONS

The Court has pending before it Defendants Team Labor Force L.L.C. and

Environmental Safety & Health Consulting Services, Inc.'s Motion for Summary Judgment

(Rec. Doc. 54). The Court has reviewed the briefs and the applicable law and now issues this

Order and Reasons.

## I.      BACKGROUND

This case arises out of personal injuries to Plaintiff Theodore Corey Mitchell. The facts,

construed in Plaintiff's favor on this motion for summary judgment, are as follows. Plaintiff was

employed as a deck hand/rigger technician by Defendant Team Labor Force, LLC ("TLF"), and

was a crew member of the M/V MS VAL. The M/V MS VAL was owned by Specialized

Environmental Resources, LLC ("SER"). On May 7, 2011, the M/V MS VAL was chartered by

Environmental Safety & Health Consulting Services ("ES&H") and was engaged in supporting

cleanup efforts related to the Deepwater Horizon oil spill. While the MS VAL was docked at

Nautical Point, Plaintiff went to investigate a lunch tent. On the way back to the MS VAL, he

encountered Captain Stephen Guidry of the M/S CAPTAIN BRUCE, an employee of ES&H.

Plaintiff states that there was an official "Buddy System" in place, pursuant to which employees

of ES&H and TLF were expected to assist each other with tasks. Captain Guidry asked Plaintiff

to assist in moving several large plastic lunch containers, each of which weighed approximately

150 pounds and lacked handles.

Plaintiff states that he positioned himself opposite the lunch container from Captain

Guidry and a deckhand from the CAPTAIN BRUCE and attempted to lift it.  As the three men

attempted to lift the container, Plaintiff complained of low back pain and they set the container

down.  Captain Guidry requested that they try again, and Plaintiff again complained of low back

pain and immediately stopped the lift.  Eventually, Captain Guidry and his crewmate loaded the

box without Plaintiff's assistance.

Defendants also submit competent summary judgment evidence regarding safety

meetings and training, pursuant to which Plaintiff was instructed in proper lifting techniques.  In

addition, Plaintiff had stop-work authority to cease performing a job he felt was unsafe.

## II.    PRESENT MOTION

Defendants TLF and ES&H now move for summary judgment on Plaintiff's claims

against them.  (Rec. Doc. 54).  They contend that Plaintiff was trained on safe lifting techniques

and should not have lifted the openly and obviously heavy lunch container.  Therefore,

Defendants argue that they were not negligent and cannot be liable to Plaintiff under the Jones

Act or general maritime law.  Defendants also argue that Plaintiff cannot succeed on an

unseaworthiness claim because they did not own the M/V MS VAL, because Plaintiff was not a

crew member of the M/V CAPTAIN BRUCE, and because the incident occurred on land.

Defendants also argue that they cannot be held liable under § 905(b) of the Longshore and

Harbor Workers' Compensation Act because they did not own the M/V MS VAL when Plaintiff

was injured.[1]

In opposition, Plaintiff argues that Defendants' motion for summary judgment is only an argument for contributory negligence and does not establish as a matter of law that Plaintiff was solely responsible for his injuries.  Plaintiff argues that Defendants' employee Captain Guidry was in a better position to know the risks of lifting the lunch container, but violated the safe lifting rules in precisely the same way, including failing to utilize stop-work authority.  With respect to the unseaworthiness claim, Plaintiff argues that due to the existence of the buddy system, the M/V MS VAL and M/V CAPTAIN BRUCE may constitute a "fleet" of vessels such that Plaintiff could be considered a crew member of both vessels.

## III.    LAW & ANALYSIS

### A.    Standard on Motions for Summary Judgment

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the

---

[1]In addition, Defendants argue that Plaintiff has not adequately responded to their Statement of Uncontested Material Facts (Rec. Docs. 54-2, 63-2), and therefore, under Fed. R. Civ. P. 56(e) and LR 56.2E, all facts in Defendants' statement must be deemed admitted.  The Court does not find this argument convincing.  Plaintiff has submitted a Statement of Contested Material Facts (Rec. Docs. 65-6, 84-4) that responds adequately (if somewhat imprecisely) to Defendants' factual contentions.  The only "facts" to which Plaintiff does not respond are legal conclusions improperly labeled as facts.

mere allegations of its pleadings.  *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986).  In deciding a summary judgment

motion, the court reviews the facts drawing all reasonable inferences in the light most favorable

to the nonmovant.  *Id*. at 255.

**B.     Jones Act Negligence**

Under the Jones Act, an employer has the duty to "provide his seaman employees with a

reasonably safe place to work."  *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551

F. Supp. 2d 471, 475 (E.D. La. 2008) (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374

(5th Cir. 1989)).  An employer breaches that duty if it fails to exercise ordinary prudence and is

thereby negligent.  *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338, 339 (5th Cir. 1997)

(en banc).  In other words, an employer breaches its duty if it disregards a danger that it "'knew

or should have known.'"  *Colburn*, 883 F.2d at 374 (quoting *Turner v. Inland Tugs Co.*, 689 F.

Supp. 612, 619 (E.D. La. 1988)).  Under the Jones Act, the negligence of a fellow employee is

imputed to the employer.  *See Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991) (noting

that this leads to "a broad basis for liability"); *see also De Zon v. Am. President Lines, Ltd.*, 318

U.S. 660, 664-65 (1943).  "The standard of care for a Jones Act seaman is to act as an ordinarily

prudent seaman would act in like circumstances."  *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th

Cir. 2001).  Apart from negligence, a plaintiff seeking relief under the Jones Act must show

causation.  "A seaman is entitled to recovery under the Jones Act if his employer's negligence is

the cause, in whole or in part, of his injury."  *Gautreaux*, 107 F.3d at 335.  The Fifth Circuit has

4

observed that this is a "liberal causation requirement," *Brister*, 946 F.2d at 354, one that places a "featherweight" burden on the plaintiff, *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975) (quotation omitted).

Defendants argue that the 150-pound lunch container was openly and obviously unsafe to lift and that Plaintiff is solely at fault for lifting it and injuring himself.  They cite portions of Plaintiff's deposition, at which he conceded that he had been trained not to manually lift objects weighing over twenty pounds, and that he knew that the lunch container was too heavy and that he could injure himself by attempting to lift it.  Defendants also emphasize that Plaintiff attempted to lift the container *twice*, when at any time he could have exercised his stop-work authority.[2]

Defendants cite two cases in support of their argument that Plaintiff is entirely at fault. In *Patterson v. Allseas USA, Inc.*, 137 F. App'x 633 (5th Cir. 2005), the Fifth Circuit reversed a bench trial verdict in favor of a seaman.  In that case, the seaman walked through a puddle and then descended a set of metal stairs without using a handrail.  *Id.* at 635.  After the bench trial, the district court dismissed the unseaworthiness claim and the Jones Act claim with respect to the shipowner's negligence, but found another defendant liable because a different employee failed to warn the seaman about the risk of descending the stairs with wet boots.  *Id.* at 636.  The Fifth Circuit reversed, holding that there was no duty to warn because the seaman, having

---

[2]Defendants also argue that Plaintiff used an improper lifting technique, based on the testimony of the Captain Winch of the MS VAL that Plaintiff said he "bent down" while lifting the lunchbox.  (Rec. Doc. 63-1 at 4).  Plaintiff responds that Captain Winch was not present at the accident to witness Plaintiff's lifting technique.  *See id.* ("I didn't see with my own two eyes, so therefore I cannot tell you in what position he was in.  This is just what he told me.").  This is an issue for the trier of fact.

walked through a puddle of water, "should have known that wet boots presented a potential hazard." *Id.* at 638.  But *Patterson* was an appeal from a judgment after a bench trial, not a grant of summary judgment.  Moreover, the danger of walking down stairs with wet boots is substantially more open and obvious than the danger of lifting an apparently heavy container. Furthermore, in the present case, the Plaintiff was directed to do so by a supervisor.

Defendants also cite *Pledger v. Phil Guilbeau Offshore, Inc.*, 2003 WL 2012382 (E.D. La. May 1, 2003) (Fallon, J.), in which this Court granted summary judgment against an individual who alleged that he slipped on algae on a deck.  *Id.* at * 1.  But *Pledger* dealt with general maritime law and LHWCA claims, not a Jones Act claim, and the analysis depended on an open and obvious growth of algae of which the plaintiff had express knowledge due to a safety meeting.  *See id.* at *6.  There were no issues of potentially negligent co-workers in *Pledger*.  And as with *Patterson* above, the facts of *Pledger* indicate that the danger there was more open and more obvious than the danger in the instant case.

Plaintiff responds that "[t]o put all the responsibility and negligence on plaintiff, ignores Captain Guidry's obligations as a supervisor overseeing the task and . . . his clear violation of multiple company safety rules."  (Pl. Opp., Rec. Doc. 65 at 5-6).  Captain Guidry's deposition testimony reflects that he and the deckhand from the CAPTAIN BRUCE regularly lifted the heavy lunch containers in violation of Defendants' safety training, and in fact complained about the weight of the containers.  Therefore, Plaintiff argues that Captain Guidry was just as negligent as Plaintiff, and perhaps more so, because Captain Guidry had more reason to know that the containers were heavy and that lifting them would violate Defendants' lift training, but nonetheless requested that Plaintiff assist with the lift pursuant to the "Buddy System."

The Court has reviewed the deposition testimony submitted by the parties. Although there are issues of contributory negligence in this case, making reasonable inferences in Plaintiff's favor, the Court cannot say as a matter of law that Plaintiff was 100% at fault for his injuries.[3] Captain Guidry was also involved in lifting the lunch container, and in fact requested Plaintiff's assistance pursuant to Defendants' policy. Captain Guidry had also been violating the lift safety training longer and had more experience with the weight and properties of the lunch containers. The trier of fact could reasonably conclude that the danger of lifting a heavy box was not so open and obvious as to prevent liability, that Plaintiff was not the only individual at fault in the lift incident, and that the negligence of others is attributable to Defendants. Accordingly, the motion for summary judgment is denied as to the negligence theory.

## C.    Unseaworthiness

"To establish a claim of unseaworthiness, 'the injured seaman must prove that the [vessel] owner has failed to provide a vessel . . . which is reasonably fit and safe for the purposes for which it is to be used.'" *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). "A vessel's condition of unseaworthiness might arise from any number of circumstances." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). For instance, in addition to the physical condition of the vessel, the vessel may have an unfit crew. *Id.*; *accord Bonmarito v. Penrod Drilling Corp.*, 929 F.2d 186, 189-191 (5th Cir. 1991). A vessel may also be unseaworthy because of "an unsafe

---

[3]The Court reaches this conclusion without considering the supplemental evidence submitted by Plaintiff following his Motion to Compel (Rec. Docs. 84-1, 84-3), which is currently the subject of a Motion to Strike (Rec. Doc. 89). Accordingly, the issue of whether to strike this additional evidence may be reserved for trial.

method of work." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354-55 (5th Cir. 1988); *accord Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992) (noting that "an unsafe method of work may also render a vessel unseaworthy").  "In addition, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001).

Defendants argue that summary judgment is appropriate on Plaintiff's unseaworthiness claim for three reasons.  First, Defendants argue that did not own the M/V MS VAL, the vessel of which Plaintiff was a crew member, and therefore they cannot be held liable for its unseaworthiness.  Plaintiff responds that Defendants can still be liable for the seaworthiness of the M/V MS VAL because they chartered the vessel for the Deepwater Horizon cleanup operation.  Plaintiff is correct that either an owner or an operator of a vessel can be liable for breach of the warranty of seaworthiness.  *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 181 (5th Cir. 1981).  Specifically, a bareboat or demise charterer takes "full possession and control of the vessel," *Reed v. S. S. Yaka*, 373 U.S. 410, 412 (1963), and can therefore be liable for unseaworthiness.  However, the Fifth Circuit has noted that in general, "a time charterer, one who has no control over the vessel, assumes no liability for . . . unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise." *Mallard v. Aluminum Co. of Canada, Ltd.*, 634 F.2d 236, 242 n.5 (5th Cir. 1981).

Plaintiff in opposition originally argued that Defendants had failed to produce any documentation of the lease or charter during discovery, suggesting that Plaintiff lacked sufficient information to oppose Defendant's motion on those grounds.  (Pl. Opp., Rec. Doc. 65 at 8). However, after Plaintiff won his Motion to Compel (Rec. Doc. 70), the Court allowed Plaintiff

the opportunity to submit a supplemental brief on the new discovery (Rec. Doc. 82).  Plaintiff's

supplemental memorandum abandons this argument.  (Rec. Doc. 84).  Therefore, this is an

appropriate basis upon which to grant summary judgment with respect to the unseaworthiness of

the M/V MS VAL.

Second, Defendants argue that the warranty of seaworthiness did not apply because the

accident happened on land and not on a vessel.  Plaintiff does not address this argument in

opposition, but the Court notes that Defendant's argument is not legally well founded.  The Fifth

Circuit has held that the warranty of seaworthiness extends to a seaman who is injured while

unloading a vessel at dock.  *Clevenger v. Star Fish & Oyster Co.*, 325 F.2d 397, 402 (5th Cir.

1963); *see also Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971) ("A vessel's

condition of unseaworthiness might arise from any number of circumstances. . . .  The method of

loading her cargo, or the manner of its stowage, might be improper.") (footnote omitted).

Third, Defendants argue that Plaintiff has not alleged unseaworthiness of the CAPTAIN

BRUCE, the vessel that he was assisting when the injuries occurred.  Defendants argue that

Plaintiff was a crew member of the M/V MS VAL, not the M/V CAPTAIN BRUCE, and that

therefore, he cannot bring a claim against Defendants for the unseaworthiness of the latter vessel,

which was not named in the Complaint.

Plaintiff responds that Defendants did own and operate the M/V CAPTAIN BRUCE, and

that there remains an issue of fact whether the MS VAL and CAPTAIN BRUCE constituted a

"fleet" of vessels.  If such a "fleet" did exist, Plaintiff argues, the "buddy system" in effect

among ES&H/TLF employees means that Plaintiff could have been considered a crew member

of each vessel in the fleet.  Defendants reply that analysis of whether two or more vessels

9

constitute a "fleet" is relevant only for the purpose of determining seaman status under the Jones Act.  Furthermore, Defendants argue that the "buddy system" was merely a "loose, volunteer system" and cite evidence suggesting that assistance with lifting would not have been expected or required.  (Rec. Doc. 71 at 8).  Defendants also note that Plaintiff fails to cite any legal authority supporting their "fleet" argument.  *Id.* at 7, 8.

Defendants are not correct that the existence of a fleet of vessels would be irrelevant to Plaintiff's seaworthiness claims.  The warranty of seaworthiness is owed to all crew members of a vessel.  *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993).  The existence of a fleet would therefore be relevant to whether Plaintiff could be considered a crew member of the M/V CAPTAIN BRUCE as well as the M/V MS VAL.  Furthermore, whether the "buddy system" is a "loose, volunteer system" remains an issue for the trier of fact.

However, the Court agrees with Defendants that Plaintiff has not adequately pled or argued a claim for unseaworthiness of the M/V CAPTAIN BRUCE.  In both the original Complaint and the two subsequent amendments, Plaintiff fails to allege unseaworthiness of the M/V CAPTAIN BRUCE, the existence of a fleet of vessels, or his status as a crew member aboard multiple vessels.  (Rec. Docs. 1, 5, 25).  Furthermore, in his opposition to Defendant's motion, Plaintiff fails to point to any factual evidence (aside from the mere existence of the "buddy system") or legal authority in support of his contentions that the two vessels could have constituted a fleet and that he could have been considered a crewman of each vessel. *Cf. Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1986) (defining a "fleet of vessels" in the context of the Jones Act).

**D.      Section 905(b)**

In the alternative to his claims for negligence and unseaworthiness, Plaintiff has asserted a claim under § 905(b).  (Rec. Doc. 25 at ¶ 14).  Section 905(b) of the Longshore and Harbor Workers' Compensation Act allows a person covered under the Act to bring an action against a vessel if he or she is injured due to the negligence of that vessel.  33 U.S.C. § 905(b).  Defendants argue that they cannot be held liable for vessel negligence under § 905(b) because they have never owned the M/S MS VAL.  This argument may not be legally well founded.[4]  Nonetheless, Plaintiff in opposition appears to have abandoned his claim for § 905(b) liability.  Moreover, since Plaintiff is a seaman under the Jones Act, he would be ineligible for relief under § 905(b).  Therefore, a grant of summary judgment is appropriate.

**IV.      CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment (Rec. Doc. 54) is DENIED with respect to Plaintiff's Jones Act negligence claim and GRANTED with respect to Plaintiff's unseaworthiness and § 905(b) claims.  IT IS FURTHER ORDERED that Defendants' Motion for an Expedited Hearing (Rec. Doc. 90) is DENIED.

---

[4]In support, Defendants cite a case in which the Southern District of Texas granted summary judgment to Laredo Offshore partly on this basis.  *See Velez v. Laredo Offshore Servs.*, No. 09-241, 2010 WL 2757489, at *4 (S.D. Tex. July 13, 2010).  That case bears two important distinctions from the present one, however.  First, the plaintiff in that case was an employee of a separate entity, not Laredo Offshore.  *Id.* at *1.  Second, the plaintiff's injuries occurred while the plaintiff's employer, not Laredo Offshore, had control of the vessel.  *Id.*  Thus, the court in that case held that Laredo Offshore had not owed plaintiff a duty at the time of his injury.  *Id.* at *4.  The exact analysis in *Velez* would not apply to an operator or charterer of a vessel, both of whom can be held liable under § 905(b).  *See* 33 U.S.C. § 902(21) (defining the term "vessel" as including a vessel's "operator" or "charterer or bare boat charterer").

New Orleans, Louisiana, this 16th day of July, 2012.

_____

UNITED STATES DISTRICT JUDGE